UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20393-ALTONGA/REID

UNITED STATES OF AMERICA,

v.

DENNIS DOPICO,

Defendant.
_________________________________/

DEFENDANT DENNIS DOPICO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE OR VARIANCE

COMES NOW the Defendant, Dennis Dopico ("Dopico"), through undersigned counsel, submits this sentencing memorandum for purposes of assisting the Court in fashioning a sentence under 18 U.S.C. Section 3553 (a) that is "sufficient but not greater than necessary to comply with the purposes of Section 3553 (a)".

*I. INTRODUCTION AND THE CRIMINAL CONDUCT.*

Dopico pled guilty on September 16, 2025, to one count of the Sherman Antitrust Act, 15 U.S.C. Section 1, as outlined in the information filed by the Government on September 10, 2025 [D.E. 1]. Dopico's guilty plea was memorialized in a written plea agreement between the Government and Dopico. [D.E. 9] on the same date.

As per the Pre-Sentence Investigation Report dated November 25, 2025, Dopico is at an offense level of 10 and Criminal History category I, which yields an advisory guideline range of 6-12 months in Zone B of the Sentencing Guidelines Table. However, the advisory guideline range increased by the mechanical volume of commerce enhancement does not reflect Mr. Dopico's

actual culpability, personal history, or risk profile. Aside from this isolated incident, Dennis has led a productive, principled life and has made meaningful contributions to the South Florida community.

As a first-time offender with a limited role and zero criminal history points, a downward variance is not only permissible, but is warranted under Section 3553 (a). Mr. Dopico's lifetime of law-abiding conduct and his actions within the context of this investigation and proceedings should be a powerful mitigating factor in support of the requested variance.

It takes genuine strength and courage to acknowledge wrongdoing in open court, and Mr. Dopico has done so without hesitation.

By accepting responsibility at an early juncture, Mr. Dopico has demonstrated honesty, humanity, and accountability—qualities that underscore his remorse and respect for the rule of law.

Antitrust matters are inherently complex, governed by intricate statutory framework and often marked by nuance. In Mr. Dopico's case, this plea was a direct and transparent effort to resolve the matter swiftly and responsibly, minimizing unnecessary burdens on the court and all parties involved.

He not only accepted responsibility in a timely fashion, but also cooperated with the Government *before* and *after* the plea in these proceedings, which took place before this Court almost contemporaneously with the filing of the charging document. Because of this chronology, along with other reasons discussed herein, the Defendant memorandum urges the Court to grant a variance below the guideline range, and that should result in probation and/or some form of non-incarcerative sentence.

The Defendant moves this Court to "impose a sentence sufficient, but not greater than necessary", to comply with the purposes of sentencing as per 18 U.S.C. Section 3553 (a). "Along with the Section 3553 (a) factors, the District Court should also consider the relevant conduct and particularized facts of the defendant's case and the sentencing guidelines" *United States* v. *Fernandes*, 2024 WL 413956 (11th Cir. 2024) citing *United States* v. *Rosales-Bruno,* 789 F. 3d 1249, 1254 (11th Cir. 2015) Based on the foregoing and the arguments set

forth herein, a downward departure and/or variance as requested by the Defendant would accomplish these objectives and temper the punishment in such a fashion to accurately reflect Dopico's conduct, acceptance of responsibility, cooperation with the government and unique personal circumstances.

II. *HISTORY AND CHARACTERISTICS OF THE DEFENDANT DOPICO.*

"The only real mistake is the one from which we learn nothing"

……*Benjamin Franklin*

Benjamin Franklin wrote that "the only real mistake is the one from which we learn nothing." For Mr. Dopico, this prosecution has been a profound and humbling lesson. He has confronted the seriousness of his conduct with sincerity and has taken responsibility for the choices that brought him before the Court.

In doing so, he has gained meaningful insight into the consequences of his actions and the standards the law requires. He has used this experience not to deflect or minimize, but to learn, to reflect, and to begin the process of rebuilding with integrity. His response demonstrates that he has internalized the lessons of this case and is committed to ensuring that such conduct is never repeated.

Mr. Dopico has taken the lessons of this antitrust investigation and prosecution with the utmost seriousness. He fully recognizes the gravity of the conduct at issue and the consequences that flow from it. For an individual whose life has otherwise been grounded in family, personal accountability, community involvement, and decades of steady, honest work, the impact of this case has been profound. These proceedings have cast an unwelcomed shadow over an otherwise stable and constructive life.

Mr. Dopico's life story is one defined by hard work, responsibility, and a deep commitment to his family and community. From an early age, he embraced labor that was physically demanding, often unrecognized, yet always honest. At just twelve years old, he took his first job as a bag boy at a neighborhood supermarket, determined to contribute to his family's household. By fifteen, he

was balancing school with shifts at a fast-food restaurant while also helping his parents and extended family operate their small, start-up seafood business in the Allapattah area of Miami. These formative experiences instilled in him the values of humility, perseverance, and reliability—traits that would guide him throughout his adult life.

As he grew older, the seafood business became more than a family obligation; it became the foundation of his professional identity. It is the only industry he has ever known. He began at the bottom; cleaning and processing crabs and lobsters, hauling heavy loads to cold storage warehouses, and performing the labor that keeps a small business functioning but rarely receives recognition.

Over the years, he took on other roles the business required: cleaning and grading the raw seafood, making deliveries to warehouses and local restaurants before sunrise, going door-to-door to build a customer base, and stepping into any task—large or small—that needed to be done. His work ethic was not abstract; it was lived daily through physical effort, long hours, and an unwavering commitment to supporting his family through honest means.

Throughout his decades in the seafood industry, Mr. Dopico also developed strong, productive, and personal relationships with the fishermen whose livelihoods depended on the supply chain he helped sustain. Between 2012 and 2017, he obtained his own commercial fishing license and worked alongside them on the water, gaining a firsthand understanding of the challenges they faced.

Because of these relationships, Dopico would frequently provide dockage, and authorized financial advances so that those fishermen could purchase bait and ice, ensuring they had the resources necessary to continue working. These were not transactional interactions; they were relationships built on trust, mutual respect, and shared experiences. Many of the friendships he formed with the fishermen and their families during this period have endured for years.

His commitment to the industry extended beyond his own business. Mr. Dopico was a founding member of the Stone Crabs Advisory Panel, a Florida statewide group created to discuss, develop, and recommend rules and regulations governing the fishing industry.

Through his participation in the Stone Crab Advisory Panel, Mr. Dopico provided practical input to fishery-management authorities on harvesting practices, trap usage, sustainability issues, and market conditions within the stone crab and spiny lobster fishery. As an active member, Dopico contributed insight drawn from his daily work with local fishermen, including the operational challenges they faced and the pricing pressures that shaped the market. His role was collaborative and advisory—offering perspective, helping ensure that regulatory discussions reflected the realities experienced by those working directly in the fishery.

In that role, he worked collaboratively with fishermen, fish houses, scientists, and state regulatory agency personnel, including representatives from the Florida Fish and Wildlife Conservation Commission. His participation reflected a genuine desire to improve the industry as a whole, protect its sustainability, and ensure that regulatory decisions were informed by the practical realities faced by those who work on the water.

Mr. Dopico has also consistently given back to his community. For years, he has donated to the Marathon Seafood Festival's Scholarship Fund, helping support local students pursue their education. He has volunteered at numerous festival events, contributing his time and labor to an institution that is central to the cultural and economic life of the Florida Keys. These acts of service were never performed for recognition; they were simply an extension of the values he has lived by since childhood—supporting his community, honoring his roots, and helping others whenever he could.

That same commitment to service is reflected in his family life. Mr. Dopico has been married to his wife, Lydia, for approximately thirty years—a partnership built on mutual support, shared sacrifice, and the same steady

reliability that has defined his working life. Together, they raised three children, and throughout those years they were active and engaged parents at the parochial schools their children attended: St. Agatha, St. Kevin's, Belen, and Lourdes Academy. They volunteered at school events, supported school activities, and remained consistently involved in their children's education and community. Their participation was steady and meaningful, reflecting the importance they placed on providing their children with structure, values, and a strong educational foundation. As a testament to their ethics and values, all three children are college graduates, have professional careers throughout the country, and are thriving in their own right.

These qualities do not excuse Mr. Dopico's conduct, but they provide meaningful context for understanding the person before the Court. His life has been shaped by labor, loyalty, community involvement, and responsibility—traits that have guided him since childhood and that continue to define him today. They demonstrate that his missteps are not reflective of his character, but rather an aberration in an otherwise steady life of work, service, and family commitment.

Mr. Dopico respectfully requests that the Court also consider his written statement accepting responsibility, in which he candidly acknowledges the seriousness of his conduct and expresses genuine remorse. His letter to the Court reflects the thoughtful reflection and accountability that he has demonstrated throughout these proceedings. In addition, the Court is directed to the letters of support submitted by his family, friends, and members of the community. These letters are incorporated herein as "Appendix A" and provide meaningful insight into Mr. Dopico's character, longstanding work ethic, and the positive role he has played in the lives of those around him.

*III. DOPICO'S ACCEPTANCE OF RESPONSIBILITY.*

Mr. Dopico appears before this tribunal as a first-time offender who has fully accepted responsibility for his conduct in this federal antitrust matter.

From the moment he understood the seriousness of the investigation, allegations, and his actions, Mr. Dopico confronted his actions directly and straight away. Upon recognizing that his conduct was in violation of the law, Dopico's conduct before and following the filing of the information demonstrates a clear and unequivocal acceptance of responsibility.

Mr. Dopico entered a timely, if not an extraordinarily early, guilty plea and provided truthful admissions and relevant information to the government. By doing so, he has satisfied the criteria for a reduction under U.S.S.G. Section 3E1.1 and consideration for the within variance.

Mr. Dopico's conduct has reflected an honest, genuine effort to accept responsibility, personal accountability and otherwise evinces genuine remorse for his actions. He has been consistent and sincere about accepting his responsibility by providing relevant and valuable information about the local spiny lobster and stone crabs trade to the government before and after his early plea.

His early plea spared this Court and the government the burden of a complex antitrust trial that would have involved economic evidence and industry experts, voluminous discovery, and co-conspirators. In short, his approach to these allegations has also directly advanced the goals of judicial economy, conservation of resources and make every effort at atonement. His ongoing cooperation reflects meaningful post-offense rehabilitation and supports the appropriateness of a variance.

Mr. Dopico's decision to take this path allowed the government to direct its efforts toward other enforcement priorities in this and likely other investigations and has and will contribute to the efficient administration of justice. As a first-time offender, Dopico's acceptance of responsibility reflects a profound personal reckoning. The experience of being charged criminally has been deeply sobering. It has been embarrassing and humiliating for him who has otherwise been a law abiding, productive member of the community. Through his actions in pursuit of redemption, Dopico has demonstrated

humility, remorse, and a genuine desire to make amends. He has greatly disengaged from the seafood business and is actively seeking other means of earning a living.

Mr. Dopico's acceptance of responsibility also advances the objectives of sentencing under 18 U.S.C. Section 3553 (a). Dopico has shown an acknowledgement of the seriousness of the offense and reduces the need for any custodial sentence in achieving specific deterrence. In sum, a favorable analysis by this Court of Dopico's reaction to these proceedings sends a clear message to the public that accountability is valued, recognized, and incentivized, thereby also promoting general deterrence.

By and through the nature and character of the government's investigation, there may be others who are brought to account for their respective actions. Mr. Dopico's acknowledgement of wrongdoing also promotes general deterrence and promotes proportionality by distinguishing Dopico from others who may deny responsibility or delay resolution of those proceedings. His genuine acceptance of responsibility encourages other defendants to confront their misconduct and contribute to the integrity of the justice system.

In these types of antitrust matters where culpability can vary significantly among participants, acknowledgement of wrongdoing is a critical feature of moral accountability. Mr. Dopico's willingness to own up to his conduct and confront its consequences indicates that this offense is an aberration in an otherwise dutiful, law-abiding life.

Even in the wake of humiliating, at times dehumanizing media publications and depictions about him because of these proceedings, Dopico remains tethered to his principles and values, which are readily gleaned from the life he has led to date, his unmistakable commitment to redemption, and that such conduct will never recur. Mr. Dopico's attitude to these proceedings are not merely perfunctory or procedural, rather they reflect a sincere attempt to make amends and prevent future transgressions of *any* kind.

## IV. *DOPICO'S COOPERATION WITH THE GOVERNMENT'S ANTITRUST DIVISION.*

Soon after he learned of the investigation by the government's Antitrust Division, and the unlawful nature and character of his participation, Mr. Dopico agreed to cooperate with the law enforcement agents and disclosed details surrounding his participation in the conspiracy as described in the information and corresponding plea agreement. His cooperation was timely, truthful, and substantial. All in all, without compromising other aspects of his cooperation which are confidential and sensitive in nature, Dopico has and shall continue to confirm certain information that may likely bear fruit in the future for other investigations and prosecutions. He has been forthright, honest, and sought to materially advance the Antitrust Division's enforcement efforts.

In evaluating an appropriate sentence, the Court should also consider the significance of Mr. Dopico's cooperation with law enforcement. His willingness to assist authorities has provided meaningful insight into the structure and operation of a complex corporate conspiracy—information that is often difficult to obtain and essential to effective enforcement. Cooperation of this nature carries substantial value, not only in advancing the government's understanding of the conduct at issue but also in promoting accountability within industries where wrongdoing can be difficult to detect. Mr. Dopico's efforts in this regard reflect a genuine commitment to rectifying his conduct and contributing to the integrity of the investigative process and success in enforcement efforts.

Dopico's assistance helped the government identify information unique to the spiny lobster and stone crab trade in the Middle Keys, understand local customs and practices involving this industry and has directly strengthened the government's investigation, and consequently, any continuing investigation and prospective prosecution. In short, Dopico's cooperation justifies an adequate recognition for his contributions and warrants a substantial reduction and requested variance.

*V. OBJECTIONS/OBSERVATIONS TO THE PRE SENTENCE INVESTIGATION REPORT: ROLE IN THE OFFENSE.*

Paragraphs 20 & 21 describe facts that may be relevant to a role assessment. Paragraph 21 of the PSI states that “As of this writing, Individual 2, Individual 3, Individual 4, and Individual 5 remain unindicted, and no additional information has been provided regarding their involvement. Therefore, a role assessment is withheld at this time.”

Because of the absence of any additional information, Dopico respectfully objects to the absence of any adjustment for role in the offense requests that the Court consider making a downward adjustment for the reasons stated below.

A. *DOPICO’S ROLE IN THE OFFENSE AND/OR GREATER CONSPIRACY IS INTERMEDIATE AND WARRANTS A DOWNWARD DEPARTURE OR VARIANCE.*

Section 3B1.2 provides for a 2, 3, and 4 level decrease to the offense level if the defendant had a mitigating role in the offense, as follows:

(a) If the Defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the Defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b) decrease by 3 levels.[1]

The determination “whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of a particular case.”[2] In so doing, the Court must “identify the universe of participants involved in the relevant criminal activity; order each participant along a continuum based on the degree of culpability in the criminal activity; identify the average

[1] USSG Section 3B1.2 Comment (n. 3 (c); See also *United States* v. *Lawson*, 128 F. 4th 243, 253 (4th Cir. 2025)

[2] *United States* v. *Guia-Sedeme*, 134 F. 4th 611, 617 (1st Cir. 2025)

participant across all likely participants in the criminal scheme; and compare the defendant's role in the criminal activity to the average participant's role".

In its fact based determination, the Court should consider:

i. The degree to which the defendant understood the scope and structure of the criminal activity;

ii. The degree to which the defendant participated in the planning or organizing the criminal activity;

iii. The degree to which the defendant exercised decision making authority or influenced the exercise of decision-making authority;

iv. The nature and extent of the defendant's participation in the commission of criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

v. The degree to which the defendant stood to benefit from the criminal activity

For years, Dopico and D & D Seafood carved out a place in the Middle Keys seafood community, working shoulder-to-shoulder with local fishermen who brought in spiny lobster and stone crab at dawn. The business was steady, honest work—sorting, icing, buying, and moving product in a market defined by tradition as much as competition. But D & D Seafood was never one of the giants that shaped the industry's direction. In the Keys, fish houses range from tiny family docks to sprawling, well-financed operations with fleets, deep capital, and the power to dictate pricing and volume. D & D sat somewhere in the middle of that landscape: visible, reliable, but modest in scale.

Its role was the kind that keeps an industry functioning, but does not steer it. Dopico bought what he could, paid what he could, and moved what he could—always aware that the real market pressure came from the much larger players whose purchasing power and infrastructure set the tone for everyone else. D & D Seafood, Corp., operated within constraints that were structural, not

self-created: limited capital, limited volume, and limited leverage in a market dominated by far bigger entities.

This context does not excuse Dopico's conduct. But it does place it in its proper frame. He was part of the industry, not a driver of it—an intermediate participant whose actions occurred within a system where others held the real authority, resources, and influence.

The facts in this case warrant an adjustment for the limited role that Dopico played in these transactions. The Defendant seeks an intermediate role adjustment under the authority and arguments cited above.

## *VI. OBJECTIONS/OBSERVATIONS TO THE PRE SENTENCE INVESTIGATION REPORT: RESTITUTION.*

The Pre-Sentence Investigation Report in paragraphs 77-78 references the general statutory authority of the Court and states, "The Court may order the defendant to make restitution to the victims of the offense, 18 U.S.C. Section 3663 (a) (3) or 18 U.S.C. Section 3583 (d)." The Defendant objects to any imposition of restitution in these proceedings or as part of the sentence imposed.

### A. *RESTITUTION SHOULD NOT BE ORDERED IN THIS FEDERAL CRIMINAL MATTER RELATED TO THE SHERMAN ACT, TITLE 15 USC § 1.*

In the federal criminal context, restitution is largely based upon two statutes: 18 U.S.C. §3663, "Order of Restitution" and 18 U.S.C. § 3663A, "Mandatory Restitution to Victims of Certain Crimes." "A federal district court has no inherent authority to order restitution, and may do so only as explicitly empowered by statute" *United States* v. *Collins*, 854 F. 3d 1324, 1329 (11th Cir. Fla. 2017). Therefore, unless the specific code under which a criminal Defendant is charged permits or mandates restitution, or is otherwise, appropriate under 18 U.S.C. §3663 or 18 USC §3663A, restitution cannot be ordered.

18 USC §3663 provides for non-mandatory restitution in cases in which the accused is convicted of a crime under Title 18, and certain sections of Titles 21 and 49. Restitution under *this* section is permissive and may be ordered at the discretion of the judge, who may consider the amount of loss sustained, the financial resources of the Defendant, and the ease or difficulty of assessing the restitution owed. Restitution may also be ordered under this section if agreed to by the parties in a Plea Agreement. On the other hand, 18 USC §3663A provides for mandatory restitution for certain crimes, namely: violent crimes, an offense against property under Title 18 and certain sections of Title 21, offenses described in the Rodchenkov Anti-Doping Act, offenses related to tampering with consumer products, and any offenses related to theft of medical products. As with the permissive restitution under 18 U.S.C. §3663, 18 U.S.C. §3663A also provides an "out" for situations wherein the victims are not identifiable or where the burden of identifying the victims and determining the amount of restitution is too complex or burdensome. *See* 18 USC §3663A (3) and 18 USC §3663(B)(ii).

In the case at bar, neither of the foregoing Title 18 provisions apply to the case at issue, which is exclusively based upon a one count violation of Title 15, nor does Title 15 provide for restitution of any kind. Moreover, the Plea Agreement itself [D.E. 9] does not include restitution in the "SENTENCING AGREEMENT" (PP. 11-14, Pgs. 7-9 of Plea Agreement [D.E. 9]) between the Government and the Defendant; it merely indicates that restitution may be ordered under any applicable statute in the POSSIBLE MAXIMUM SENTENCE (PP. 8-9, Pg. 6 of Plea Agreement [D.E. 9]); this language does not rise to the level of "agreement" by the parties as is required.[3] As such, restitution should not be ordered and the defense objection to same should be sustained.

[3] Although the Defendant recognizes the Court's inherent authority to divert from and/or reject the Parties' agreement, none of the citations to U.S.S.G. Section 5E1.1 or 18 U.S.C. Section 3663 (a) (3) or Section 3583 (d) are relevant to these proceedings based on the charges contained in the information and/or plea agreement.

Here, any amount of restitution would have to be easily identifiable and not overly complex to trigger restitution. Given the complexity of the issues, the large number of victims[4] etc., the Defendant requests that this Court not order restitution. Moreover, the availability of civil remedies, more suitable to complex economic determinations, would support deferring an order of restitution to the realm of civil proceedings.

At this juncture, alleged victims of this subject conspiracy have filed at least one civil class action: *Paradise Tails, Inc.* v. *D & D Seafood Corp., Keys Fisheries, Inc., et al.*, 1:25-cv-24603-CMA and yet another related civil claim for damages: *The Gourmet Crab Inc.* v. *D & D Seafood Corp., BSC Fisheries LLC, Billy's Stone Crabs, Inc., Brian Hershey et al*, 1:25-cv-24863-KMW.[5]

The Defendant disputes any order of restitution and requests that any damages due to victims be addressed by and through the pending or prospective civil proceedings.

## *VII. STATEMENT OF REASONS PURSUANT TO 18 U.S.C. SECTION 3553(a)(2) FOR A VARIANCE WITHIN OR ALTERNATELY A SENTENCE BELOW THE GUIDELINES RANGE.*

The Section 3553 (a) (2) factors support the exercise of the Court's discretion and favor a sentence below the guideline range. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate

[4] In this investigation, the defense understands that the government claims that the subject conspiracy affected commerce and consequently, numerous fishermen as victims. Upon information and belief, the Government may also represent to the Court that any element of restitution would be better served by and through civil proceedings.

[5] Inclusion of these proceedings is made to fully apprise the Court of the pending nature of civil proceedings seeking damages for those who claim to be victims of the conspiracy. Citation to these proceedings is not intended to be any admission that the Plaintiffs in these proceedings are "victims" of any of the Defendant's conduct within the context of the conspiracy described in the Information or Plea Agreement and all rights and defenses are expressly reserved. At least as it pertains to the *Gourmet Crab* case; the Government agrees the Plaintiff is not a victim at this time.

deterrence to criminal conduct; and to protect the public from further crimes of the defendant can be secured with a substantial downward departure or variance as requested herein. A sentence of probation with no custodial detention would certainly reflect the seriousness of the offense, promote respect for the law, and provide a just and tempered punishment for the offense.

Mr. Dopico has already endured significant consequences as a result of this case. He has suffered substantial occupational, professional, and reputational harm; he faces multiple civil actions seeking considerable financial damages, penalties, and the prospect of additional civil claims; he continues to bear the personal and familial fallout that accompanies a federal prosecution. These consequences are real, ongoing, and punitive in their own right. Considering this cumulative impact, a probationary sentence—consistent with the requested variance—appropriately accounts for the penalties he has already absorbed while still satisfying the purposes of sentencing under § 3553(a).

Again, Mr. Dopico fully acknowledges the seriousness of his conduct and has demonstrated a sincere commitment to rehabilitation. He has taken meaningful steps toward understanding the impact of his actions and toward rebuilding the trust that was compromised. At this juncture, he is well-positioned to continue the difficult but necessary work of personal reform. He is prepared to engage constructively in the process of education, accountability, and forward-looking growth, and he is committed to maximizing his ability to make amends and contribute positively moving forward.

More specifically, his undeniable cooperation and assistance to the government agents marks a wind down to his involvement in the spiny lobster and stone crab trade. He has greatly disengaged from this aspect of the industry and has an opportunity to forge new, constructive employment opportunities with the help of his friends and family. Because of this, there is every reason to believe the public need not fear any future criminal activity or recidivism from Mr. Dopico.

As to the concern of avoiding unwarranted sentencing disparities, Mr. Dopico stands in a unique position: he is the first individual in this matter to come before the Court for sentencing. The cooperation he provided to law enforcement has already contributed to a broader investigative effort—one that may lead to additional arrests and future prosecutions. Because those cases have not yet materialized, there are no co-defendants against whom his sentence can presently be compared to. In this early posture, any attempt to measure proportionality would be speculative at best. The only fair and principled approach recognizes that Dopico's sentence will serve as the initial benchmark in a developing case, based on the totality of the circumstances in *this* case, not a reaction to sentences that do not yet exist.

Nonetheless, a fundamental concern of justice is that those who are similarly situated be treated similarly and those whose offense is lesser not be treated excessively harsh. The facts are that Dopico, although a participant in the conspiracy as described in the information, was never in the top tier category of others in the industry.

We submit that any downward departure the court is inclined to entertain based on all the factors would not create unwarranted sentence disparity but rather considers all the relevant factors as applicable to *this* Defendant's conduct and involvement. Mr. Dopico's forthright acknowledgement of criminal wrongdoing, combined with his status as a first-time offender and cooperation with the government authorities, demonstrates genuine remorse, promotes judicial economy, and advances the goals of deterrence, proportionality, and rehabilitation.

## *VIII. SENTENCING FRAMEWORK AND THE APPROPRIATENESS OF A ZONE B SENTENCE.*

Mr. Dopico's advisory guideline range of 10 places him in Zone B of the Sentencing Table, a category that expressly authorizes non-incarcerative

sentencing options under U.S.S.G. § 5C1.1(c). Within Zone B, the Guidelines permit a sentence of probation with a condition of home detention, community confinement, or intermittent confinement, as well as a split sentence combining a brief custodial component with supervised release. These options reflect the Sentencing Commission's recognition that certain defendants—particularly first-time offenders with strong community ties and a demonstrated history of productive employment—can be effectively sanctioned without a term of imprisonment.

A Zone B sentence is especially appropriate and reasonable here, given the totality of the circumstances. Courts routinely look at "whether the sentence is substantively reasonable under the totality of the circumstances", *United States* v. *Bodenhamer*, 334 Fed. Appx. 941 (11th Cir. 2009), citing to *United States* v. *Pugh*, 515 F. 3d 1179, 1189-90 (11th Cir. 2008) Mr. Dopico has lived a life defined by steady work, family responsibility, and service to his community and industry. He has no prior significant criminal history[6], poses no risk of recidivism, and has demonstrated genuine acceptance of responsibility. His conduct in this case, while serious, stands in stark contrast to the decades of lawful, constructive behavior that preceded it. The Guidelines themselves contemplate that individuals with this profile may be sanctioned through structured, non-custodial means that promote accountability while preserving their ability to continue supporting their families and contributing to their communities.

In Mr. Dopico's case, these considerations are particularly compelling. He has been the primary source of stability for his family, has longstanding relationships within the fishing community, and has consistently engaged in lawful, productive work. A non-incarcerative sentence would allow him to

[6] Dopico was cited for possession of undersized crawfish in Monroe County, a misdemeanor in Docket. No. 03MM45-AM in 2003. This matter resulted in a withhold of adjudication and six months' probation. Dopico successfully completed the probation and performed the required 66 hours of community service.

continue meeting these responsibilities while still reflecting the seriousness of the offense.

The request for a non-incarcerative sentence would also be "substantively reasonable under an abuse of discretion standard" as per *United States* v. *Irey*, 612 F. 3d 1160, 1180 (11th Cir. 2010 en banc) because it is *within* the advisory guidelines and such a request amount~~s~~ to a minor variance, although every Section 3553 (a) factor has been accounted for and favors the defendant. See *United States* v. *Fernandes,* 2024 WL 413956 (11th Cir. 2024), citing to *Gall* v. *United States*, 552 U.S. 38, 50 n. 6 (2007) (The District Court has wide discretion to decide whether the Section 3552 (a) factors justify a variance)

Although "a major variance should be supported by a more significant justification than a minor variance, the district court need not account for every Section 3553 (a) factor…" *Id.* at 4. Here, because the defendant has satisfied all of the factors, a minor variance *within* the advisory guidelines is amply supported.

In short, a Zone B sentence is not only authorized by the Guidelines—it is the most appropriate and proportionate outcome in light of Mr. Dopico's history, characteristics, and the statutory factors the Court must consider. It imposes real consequences, promotes respect for the law, and provides just punishment without being greater than necessary.

Because Dopico falls within Zone B of the Sentencing Table, §5C1.1(c) expressly authorizes a sentence of probation with a condition of home detention or community confinement. In the case at bar, the factors supporting a non-custodial sentence are compelling: Dopico's lack of criminal history, stable employment, family responsibilities, demonstrated response to enforcement efforts by the Government. A structured probationary sentence with home detention satisfies the purposes of sentencing while avoiding unwarranted disparities among similarly situated Zone B defendants.

## *IX. CONCLUSION.*

For the reasons stated above, we respectfully request that the Court issue a sentence below the guidelines range of incarceration. The Defendant respectfully submits that a sentence below the advisory guidelines in the range of non-custodial probation would both fulfill the purposes of 18 U.S.C. Section 3553 (a), best serve the interests of justice and is the appropriate and just outcome. Mr. Dopico and undersigned counsel sincerely appreciate the Court's consideration of the points raised in this memorandum and the information submitted by the Probation Officer.

By: /s/ Robert N. Pelier
Robert N. Pelier, Esq.
F.B.N: 998834
*Counsel for Dennis Dopico*
4649 Ponce de Leon Boulevard, Suite 301
Coral Gables, Florida 33146
Telephone: (305) 529-9199
Facsimile: (305) 529-9290
Service Emails: Rpelier@pelierlaw.com
mgonzalez@pelierlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was electronically filed with the Clerk of Court using CM/ECF to all counsel of record identified herein and furnished via email to: Assistant US Attorneys: Nalina Sombuntham, Nalina.sombuntham2@usdoj.gov, David Bernhardt, Jr. david.bernhardt@usdoj.gov, Haley Pennington, haley.pennington@usdoj.gov on this 23rd day of December, 2025.